FORM B104 (08/07)                                                                                                    2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

**FILED**

**NOV 08 2010**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____
Deputy Clerk

| PLAINTIFFS<br>KENNETH TANNER, an individual, on his own behalf and on behalf of all others similarly situated | DEFENDANTS<br>ERIK DeSANDO |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Preston Law Offices, 21001 N. Tatum Blvd., Ste 1630-430, Phoenix AZ 85050, (480) 269-9540, Parisi & Havens LLP, 15233 Valleyheart Drive, Sherman Oaks, CA 91403 (818) 990-1299 | ATTORNEYS (If Known)<br>Gerald J. Koh, KM Law Group, LLP, 16000 Ventura Blvd., Ste. 760, Encino, CA 91436, (818) 789-8400 |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin | ☑ Debtor ☐ U.S. Trustee/Bankruptcy Admin |
| ☑ Creditor ☐ Other | ☐ Creditor ☐ Other |
| ☐ Trustee | ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Debtor controlled and operated fraudulent advance-fee talent service, in violation of Cal. Lab. Code § 1701 et. seq. Tanner seeks a determination that his claims are excluded from discharge under 11 U.S.C. § 523(a)(2). Tanner also objects to the discharge because of failure to maintain adequate records under 11 U.S.C. § 727(a).

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☑ 2 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☑ 1 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
　　(other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☑ 3 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☑ Check if this case involves a substantive issue of state law | ☑ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 2,000,000.00 |

Other Relief Sought

FORM B104 (08/07), page 2                                                          2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| **NAME OF DEBTOR**<br>Erik DeSando | | **BANKRUPTCY CASE NO.**<br>2:10-BK-41514 |
| **DISTRICT IN WHICH CASE IS PENDING**<br>Central District of California | **DIVISIONAL OFFICE**<br>Los Angeles | **NAME OF JUDGE**<br>Samuel Bufford |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| **PLAINTIFF** | **DEFENDANT** | **ADVERSARY PROCEEDING NO.** |
| **DISTRICT IN WHICH ADVERSARY IS PENDING** | **DIVISIONAL OFFICE** | **NAME OF JUDGE** |
| **SIGNATURE OF ATTORNEY (OR PLAINTIFF)**<br><br>*David Parisi /s/* | | |
| **DATE**<br>11/8/10 | **PRINT NAME OF ATTORNEY (OR PLAINTIFF)**<br>David C. Parisi | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.



Ethan Preston (263295)
PRESTON LAW OFFICES
21001 North Tatum Boulevard, Suite 1630-430
Phoenix, Arizona 85050
(480) 269-9540 (telephone)
(866-509-1197 (facsimile)
ep@eplaw.us

David C. Parisi (162248)
Azita Moradmand (260271)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE**

**CENTRAL DISTRICT OF CALIFORNIA (LOS ANGELES DIVISION)**

| | |
|---|---|
| In re ERIK DeSANDO,<br><br>                Debtor, | No. 2:10-BK-41514-PC<br><br>Chapter 7<br><br>Judge Samuel L. Bufford<br><br>Adversary Proceeding No. |
| KENNETH TANNER, an ndividual,<br>on his own behalf and on behalf of<br>all others similarly situated,<br><br>                Plaintiff,<br><br>        v.<br><br>ERIK DeSANDO<br><br>                Defendant. | **COMPLAINT TO OBJECT TO DISCHARGE AND TO EXCLUDE PLAINTIFFS' CLAIMS FROM DEBTOR'S DISCHARGE** |

This case relates to *In re Erik DeSando*, No. 2:10-BK-41514-PC, a voluntary

petition under Chapter 7, pending in the Central District of California. Plaintiff

Kenneth Tanner ("Tanner"), by his attorneys, makes this complaint against

Defendant Erik DeSando ("DeSando" or "Debtor"). Plaintiff's allegations as to his

own actions are based on knowledge. The other allegations are based on his

counsel's investigation of publicly available documents and interviews with

No. 09-3770 CRB

Complaint

1  witnesses, and information and belief.

2       1.      This is a class action adversary proceeding arising from the Debtor's

3  operation, control, and management of Be., LLC ("Be") a fraudulent talent agency

4  which systematically violated California's Advance-Fee Talent Services Act (Cal.

5  Lab. Code §§ 1701-1701.20 (2009) ("AFTSA")). [1]

6       2.      Through counsel, DeSando has indicated he does not possess or

7  control any documents relating to Be's operations or its finances. The other owners

8  of Be have asserted that all of its records have been destroyed or lost wholesale

9  during the first part of 2009. The absence of any records related to Be, including

10  any evidence of Be's finances or that DeSando no longer possesses any interest in

11  Be, precludes DeSando's discharge under 11 U.S.C. § 727(a)(3). Further, certain of

12  Tanner's claims against DeSando are excepted from discharge under 11 U.S.C. §

13  523(a)(2)(A).

14      3.      The California Legislature enacted AFTSA to prohibit the exact

15  conduct which Be committed here. A relevant portion of AFTSA's legislative

16  history states:

17       The author states that "[T]his bill was brought to me by the Los
         Angeles City Attorney's and District Attorney's offices after a news
18       exposé chronicled the exploitation of children, their families, and their
         hopes and dreams. **People posing as talent managers would request**
19       **hefty deposits and promise things they couldn't deliver. They**
         **would string parents along and continue to make money off them**
20       **by promising careers in entertainment for their children.** This bill
         will help crack down on unscrupulous scam artists. In addition, it will
21       help to ensure the stability and growth of our entertainment industries
         while making sure that artists have access to the widest possible range
22       of services."

23       This bill seeks to ensure that actors breaking into the business know
         whether they are dealing with a reputable artist's manger. The Los
24       Angeles County District Attorney and the Los Angeles City Attorney
         have each handled a number of cases involving **fraudulent**
25       **representations made to potential child actors and others by scam**
         **artists posing as "talent managers". This anti-fraud measure**
26       **seeks to protect talent from such predators.**

27  _____
    [1]  Most of the events giving rise to this Complaint occurred prior to the enactment of
28       Legislature's substantial revisions to AFTSA in 2010 that made it even more stringent. This
         Complaint notes the applicable version of the statute.

Complaint                                           2

1 AB 884, Assembly Comm. on Labor and Employment, available at

2 http://www.leginfo.ca.gov/pub/99-00/bill/asm/ab_0851-

3 0900/ab_884_cfa_19990422_080433_asm_comm.html (Apr. 22, 1999) (emphasis

4 added).

5     4.     DeSando has publicly denied that his business violated AFTSA or

6 even that AFTSA applied to his business. In an August 23, 2008 newscast by a Bay

7 Area ABC affiliate, the California state senator who wrote AFTSA directly and

8 explicitly contradicted this denial:

> [California State Senator Sheila Kuehl] wrote a powerful state law to regulate [these types of talent companies.] The law is Section 1701 of the California Labor Code. It says talent companies that charge an advance fee must follow lots of rules . . .
>
> "We are not governed by 1701," says Be Productions owner Erik Desando. Desando says Be Productions, formerly known as My Artist's Place, does charge fees up front and does help kids get into show business, but it is not an advance fee talent service. . . .
>
> ABC7 legal analyst Dean Johnson says using outside vendors would not exempt Be from the law . . . "They take an advance fee and for that fee you get access to essentially everything that an artist would want to develop his or her career," says Johnson. "That is the kind of service that is exactly what the authors of the talent service agencies statute intended to cover." **The author [of AFTSA] agrees. "They do fall under the definition of advance-fee talent agencies, so in and of itself, by not posting a bond they are violating the law," says State Sen. Kuehl. "We made the law very broad in order to snare these kinds of folks."** We asked Desando if he could see why someone would think he would fall under 1701. "Nope, not if they know our business," says Desando. "I've got our own high priced attorneys there telling us, you're not, we don't sell talent services." . . .
>
> "This really smacks right into the advance fee talent services because it is indirectly providing service to the talent," says Dean Fryer with the Labor Commission. Still, Desando says, not me. . . .

23 A true and correct copy of a transcript of this newscast is attached as Exhibit 1.

24     5.     Tanner's counsel represents Tanner and other customers of Be in the

25 United States District Court for the Northern District of California (the "*DuFour*

26 case"). In the *DuFour* case, the court found that Be's contracts violated AFTSA on

27 a preliminary injunction. DeSando has publicly stated that Be had 5,000 members.

28 Be's website indicated it had 7,000 members. Be's contracts were priced between

---

Complaint                                     3

$2,500 and $5,000 – Be took in millions of dollars under these contracts.

6.    In addition to these extensive violations of AFTSA, Be's marketing practices also employed more traditional fraud. Specifically, Be represented to its customers that they were "selected" as members on the basis of their talent and/or marketability. Be's website explicitly represented that Be's offer of membership was exclusive:

> Are all the children selected from the screentest?
> Unfortunately no. Only a small percentage of the children screened, meet the industry profile that top agents, talent managers and casting directors are looking for.

A true and correct copy of the foregoing webpage is attached as Exhibit 2. In truth, Be based its selection of customers on their ability to pay. One disgruntled Be Productions ex-employee posted the following in a public Internet forum:

> Notice that letter they write at the top of your form then circle? That is a code letting the sales person a.k.a. "talent director" know how much money you make and what tactic of sale to use on you and your family. . . . They conduct at several 'callbacks' a day and break them down into small groups to make you feel like there was a cut and they conduct screen tests EVERY week! They call EVERYONE back as long as when you filled out the form at the screen test your income level fit the bill.

A true and correct copy of the foregoing webpage is attached as Exhibit 3.

7.    As Be's CEO, DeSando participated in, authorized, and directed Be's violations of AFTSA as well as its fraudulent marketing. He is liable for Be's conduct under traditional principles of agency.

**Parties and Associated Non-Parties**

8.    Plaintiff Kenneth Tanner is a natural persons residing in North Hollywood, California.

9.    Debtor Erik DeSando is a natural person residing in California.

10.    Be., LLC is a California limited liability company which lists its address with the California Secretary of State at 2029 Century Park East, Suite 900, Los Angeles, California 90067. Be's agent for service of process at this address resigned on February 6, 2010. Prior to May 2008, Be's name was My

1    Artist's Place, LLC. DeSando, Barry Falck, and Jacob Steinbeck are the members

2    of Be.

3        11.    Dynamic Showcases, LLC is a California limited liability company

4    which lists its address with the California Secretary of State as 1841 N Avenue 52,

5    Los Angeles, California 90042. DeSando, Falck, and Steinbeck controlled

6    Dynamic Showcases and used it to provide auditions or "talent showcases" to.

7    <center>**Jurisdiction and Venue**</center>

8        12.    This is an adversary proceeding pursuant to Rule 7001 of the Federal

9    Rules of Bankruptcy Procedure to object to Debtor's discharge under 11 U.S.C. §

10    727(a), and to exclude certain of Plaintiff's claims from the discharge pursuant to

11    11 U.S.C. § 523(a)(2)(A). This Court has jurisdiction over this core proceeding

12    pursuant to 28 U.S.C. § 157(b)(2)(B), (I), (J)

13        13.    This Court has personal jurisdiction over the Defendants under

14    California Code of Civil Procedure section 410.10 because, *inter alia*, the acts

15    alleged herein were committed in Los Angeles County. Venue before this Court is

16    proper under 28 U.S.C. § 1409.

17        14.    Tanner's state court complaint seeks a judgment in favor of him and

18    the other members of the Class alleged in that complaint (and in this complaint) in

19    the amount of treble damages, but not less than the amount paid by the Class

20    members to Defendants, and punitive damages.

21    <center>**Be's Marketing Practices**</center>

22        15.    **The Initial Approach and the Screentest:** Be hired sales

23    representatives, equipped them with a standardized sales script, and sent them into

24    middle-class shopping malls and other places where families with children were

25    found. Following this sales script, the sales representatives would approach these

26    families and state that the children could have profitable careers in the

27    entertainment industry. The representative would then urge the family to have the

28    children participate in screentest Be's offices or a rented venue (like hotel

---

Complaint                                                                         5

conference room), and then afterwards attend a presentation. Be's screentest served to create the illusion of a "selection" and exclusivity: in fact, the most significant criteria for a child's subsequent "selection" as a Be member was the family's ability to pay Be's fees.

16. **The Sales Pitch:** At the presentation, Be culminated its marketing with a sales pitch. The central thrust of this sales pitch was that membership in Be would create opportunities for professional employment in the entertainment industry for the child (including auditions, casting calls, and "showcases" with entertainment industry professionals, who in turn could secure professional employment for Be members). The sales pitch included a video that extolled Be's services, prominently displayed the pictures of contemporary child stars (who would be immediately recognized by the families' children), and otherwise falsely implied that Be or its founders had been instrumental in starting their careers. Indeed, the sales pitch expressly stated that Be could help children become professionally successfully in the entertainment industry by coordinating and introducing members to various such services provided by others, such as acting classes, photo shoots and styling, for which Be's members would be eligible for a supposed discounted rate. Finally, the sales pitch would tout the opportunity to act in television shows produced by Be.

17. After this initial presentation, Plaintiff and thousands of other families who are members of the proposed class were separated individually from the other families and herded into back rooms for a high-pressure sales pitch. In the back office, each child that attended the presentation was told that they were talented and/or had strong marketing appeal, and could have a career in television and film if the family subscribed to Be's services.

18. The sales scheme was also designed to weaken financially strapped parents' resistance to Be's exorbitant fees and (not coincidently) to appeal to their hopes for their children and that their children could provide another source of

Complaint                                    6

income. As DeSando wrote in the October 23, 2008 Bumble (an internal email sent to Be employees) that "[p]eople just need to believe that there is something better for them out there. They have to believe we can IMPROVE the quality of their life as well as their kids."

### Be's Marketing Practices Violated AFTSA

19.    AFTSA's scope hinged on three interlocking statutory definitions: "artists" and "advance fees," which in turn were part of the definition of an "advance-fee talent service." AFTSA defined "advance-fee talent services" as any "person"

> who charges, attempts to charge, or receives an advance fee from an artist for one or more of the following, or for the purchase of any other product or service, including, but not limited to, those described in subdivisions (e) to (i), inclusive, of Section 1701.12, in order to obtain from or through the service one or more of the following:
>
> (1)    Procuring, offering, promising, or attempting to procure employment, engagements, or auditions for the artist.
>
> (2)    Managing or directing the development or advancement of the artist's career as an artist.
>
> (3)    Career counseling, career consulting, vocational guidance, aptitude testing, evaluation, or planning, in each case relating to the preparation of the artist for employment as an artist.

Cal. Lab. Code § 1701(b) (2009). (AFTSA broadly defined a person as "any individual, company, society, firm, partnership, association, corporation, limited liability company, trust, or other organization." Cal. Lab. Code § 1701(e) (2009).)

20.    AFTSA defined an "advance fee" as

> any fee due from or paid by an artist prior to the artist obtaining actual employment as an artist or prior to the artist receiving actual earnings as an artist or that exceeds the actual earnings received by the artist as an artist.

Cal. Lab. Code § 1701(a)(1) (2009).

21.    Finally, AFTSA defined artists as "persons who seek to become or are actors or actresses rendering services . . . in the production of motion pictures . . . and other artists or persons rendering professional services in motion picture,

Complaint                                    7

1  theatrical, radio, television, and other entertainment enterprises." Cal. Lab. Code §
2  1701(c) (2009).

3      22.    **Be Marketed Career Management Services:** Be fits neatly into the
4  AFTSA definition of an advance-fee talent service because it charged advance fees
5  for "[m]anaging or directing the development or advancement of the artist's career
6  as an artist," and "[c]areer counseling, career consulting, . . . evaluation, or
7  planning . . . relating to the preparation of the artist for employment as an artist."
8  Cal. Lab. Code § 1701(b)(2), (3) (2009). True and correct copies of Tanner's
9  contract with Be which contain the foregoing statement is attached as Exhibit 4
10 (except that certain private information has been redacted). Each of Be's contracts
11 contain the following description of its services:

12         We are an entertainment company that offers a membership
           comprised of a collection of resources, discounts and a support system
13         designed to help individuals get started on a pathway to success.

14 (Ex. 4.) The disclaimer in each of Be's contracts eliminates any ambiguity: the
15 ultimate goal of the "pathway to success" referenced above was employment in the
16 entertainment industry:

17         Purchaser acknowledges and agrees that none of the offerings of be.
           [sic] include any promise or guarantee of employment in the
18         entertainment industry, whether oral or written, expressed or implied.

19 (*Id.*) Even in its contracts, Be has marketed its services as facilitating the
20 professional success of its clients in the entertainment industry ("a support system
21 designed to help individuals get started on a pathway to success") (*Id.*)

22     23.    Be operated a website (called Gonnabe.com). Be's website stated that
23 Be gave "young artists the resources, services, experience and exposure that they
24 need in order to succeed in the entertainment industry." (A true and correct copy of
25 the foregoing webpage is attached as Exhibit 5.) Likewise, Gonnabe.com stated
26 that Be Productions is "a proven game plan in which the artist gets to work with
27 top entertainment pros that who will prepare them to be evaluated" by
28 entertainment industry professionals, and that if its customers "want[ed] to get

---

Complaint                                    8

1   their career launched in the entertainment industry, you've come to THE right

2   place." (A true and correct copy of the foregoing webpage is attached as Exhibit

3   6.) "Remember there are a lot of things you will need to prepare before you can get

4   started in TV, film and commercials! Here at BE, we'll help you with the details of

5   everything you'll need to know." (*Id.*) These representations are clear evidence that

6   the "support system" which Be marketed and which Be members paid an advance

7   fee for included career management and/or career consulting in the entertainment

8   industry. Be falls under subsection 1701(b) for that reason alone.

9       24.   **Be Marketed Professional Evaluation Services:** Be is also an

10  advance-fee talent service because it marketed and charged an advance fee for its

11  members to obtain an "evaluation . . . relating to the preparation of the artist for

12  employment as an artist" through its "support system." Cal. Lab. Code §

13  1701(b)(3) (2009). These evaluations were an integral part of Be's marketing its

14  auditions and other services:

15              Be. Provide's [sic] a proven game plan in which the artist gets to work
                with top entertainment pros that who will prepare them to be
16              evaluated by top agents, managers and casting directors in San
                Francisco and Hollywood.
17
    (Ex. 6.) Be provided its members instruction manuals. A true and correct excerpt
18
    of such instruction manual is attached as Exhibit 7. In these instruction manuals,
19
    Be's evaluations were provided in connection with the Dynamic Showcases'
20
    auditions:
21
                [The professionals participating in Dynamic Showcases' auditions
22              will] complete a thorough evaluation of your child's talent and email
                it to you, stating your child's strengths and the actions that need to be
23              taken in order to be presented up by a manager or agent. . . . Agents
                and managers will offer helpful tips for improvement via mail. You
24              can take this valuable feedback to your ongoing classes with Rising
                Stars.
25
    (Ex. 7.) Be's instruction manual explicitly described the evaluation of Be members
26
    as relating to their preparation for professional employment in the entertainment
27
    industry. Even though the actual evaluation was provided by third-party agents and
28

Complaint                                      9

managers, Be marketed the evaluation as part of its "support system." Be is an

advance-fee talent service under Labor Code subsection 1701(b)(3).

25.   **Be Marketed Its Services As Providing Access to Auditions and the Prospect of Employment:** Be is also an advance-fee talent service because it marketed its services as providing indirect access to Dynamic Showcases' auditions. *Cf.* Cal. Lab. Code § 1701(b) (2009) (advance-fee talent service receives advance fee "in order to obtain" auditions, etc. "from or through the service") (emphasis added). Although Dynamic Showcases actually charged the fee specifically attributable to these auditions, the most significant part of Be's services (as confirmed by its contracts and marketing) was access to the auditions. Plaintiffs and the other Class members paid advance fees in order to obtain auditions through the Be's "support system."

26.   Be is also an advance-fee talent service because its members paid it advance fees in order to obtain offers for, or attempts to procure, employment in the entertainment industry through the Be LLC "support system." Each of Gonnabe.com's webpages explicitly solicited talent agents to browse its member profiles for potential actors: "Are You an AGENT Looking for Talent? Looking for talent for your next big production? CLICK HERE." (*See, e.g.*, Exs. 6 and 7.)

27.   Even where Be's "support system" offers the prospect of employment in the entertainment industry indirectly – through auditions with Dynamic Showcases or through a profile on Gonnabe.com, and then through representation with an agent, it fell within the broad definition of an advance-fee talent service. *Cf.* Cal. Lab. Code § 1701(b)(1) (2009) (advance-fee service includes person paid advance fee "in order to obtain . . . through the service . . . [p]rocuring, offering, promising, or attempting to procure . . . engagements, or auditions for the artist").

28.   **Be Violated AFTSA:** While Be violated AFTSA in any number of ways, it is sufficient to focus on one violation that is common to every customer of Be. Labor Code section 1701.4 imposed specific requirements on advance-fee

talent services' contracts with their customers, and Be's contracts did not comply with these requirements. (*Cf.* Ex. 4 *with* Cal. Lab. Code § 1701.4(a) (2009)). Specifically, Be's contracts do not identify "the representative executing the contract on behalf of the advance-fee talent service," "[a] description of the services to be performed, a statement when those services are to be provided," or the elaborate refund provision required by section 1701.4. Cal. Lab. Code § 1701.4(a)(1), (2), (4) (2009). The court in the *DuFour* proceeding in the Northern District of California held that AFTSA applied to Be and that Be's contracts violated AFTSA:

> Based on the evidence attached to Plaintiffs' motion for preliminary relief, Be LLC does indeed qualify as an Advance-Fee Talent Service. Plaintiffs have shown that the contracts at issue explain that Be LLC is "an entertainment company that offers a membership comprised of resources, discounts and a support system designed to help individuals get started on a pathway to success." . . . Be LLC's website indicates that it gives "young artists the resources, services, experience and exposure that they need in order to succeed in the entertainment industry." . . . The evidence also shows that Be LLC charges Plaintiffs an advance fee. This evidence situations Be LLC within AFTSA's broad definition of an advance-fee talent service. . . . Because Be LLC has been shown to be an advance-fee talent service, California's AFTSA applies and imposes certain requirements on all contracts between such a service and its clients. . . . According to the copies of contracts attached with Plaintiffs' moving papers, their contracts with Be LLC violated all these provisions of [AFTSA.]

*DuFour v. Be., LLC*, No. 09-3770, 2009 WL 4730897, *4 (N.D. Cal. Dec. 7, 2009).

29.    Under AFTSA's refund provision, if customer demands a refund because the advance-fee talent service does not provide the services required, and the customer does not receive the refund within 48 hours, "the advance-fee talent service shall pay the artist an additional sum equal to the amount of the fee." Cal. Lab. Code § 1701.4(e)(1) (2009). Where an advance-fee talent services' contract does not comply with Labor Code section 1701.4, it is "voidable at the election of the artist and, in that case, shall not be enforceable by the advance-fee talent service." Cal. Lab. Code § 1701.4(c) (2009).

Complaint                                11

**Be's Marketing Practices Were Fraudulent and Deceptive**

30.    Be's marketing practices were fraudulent and deceptive in a variety of ways. following paragraphs discuss five systematic misrepresentations and fraudulent concealments ("Misrepresentations") common to each Be member. The Misrepresentations were at the core of the Primary Defendants' schemes to obtain a membership fee from each Class member. The Primary Defendants' perpetuated these schemes throughout Be's active operations, from February 2006 until March 2009. The Misrepresentations included outright fraud, deceitful statements of half-truths, and the fraudulent concealment of material information.

31.    **Be Concealed That Class Members Were Selected on the Basis of Their Ability to Pay:** Be conducted a "screen test" prior to making its ultimate sales pitch. As part of the sales pitch, Be indicated that the Class members were "selected" on the basis of talent and/or marketability. Gonnabe.com reinforced the suggestion that an offer of Be membership was exclusive:

> Are all the children selected from the screentest?
> Unfortunately no. Only a small percentage of the children screened, meet the industry profile that top agents, talent managers and casting directors are looking for.

(Ex. 2.) This purported selectivity contributed to Class members' estimation that they could be successful in the entertainment industry, and reasonably prompted them to invest more in their potential entertainment career (and specifically on Be's services). In fact, the results of Be's "screen tests" were not determined by the likelihood of professional success, but financial ability and willingness to pay Be. One disgruntled Be Productions ex-employee posted the following in a public Internet forum:

> Notice that letter they write at the top of your form then circle? That is a code letting the sales person a.k.a. "talent director" know how much money you make and what tactic of sale to use on you and your family. . . . They conduct at several 'callbacks' a day and break them down into small groups to make you feel like there was a cut and they conduct screen tests EVERY week! They call EVERYONE back as long as when you filled out the form at the screen test your income level fit the bill.

(Ex. 3.) Be's suggestion that Class members were "selected" on the basis of their likelihood of professional success (and its implication for future income) – rather than their financial ability and willingness to finance Be's fees, had a natural tendency to influence, and was capable of influencing, consumers' decision about purchasing Be membership. If Plaintiff and the Be members were told that they were "selected" on the basis of their ability and willingness to finance Be's membership fee, they would not have agreed to their contracts or paid Be's fees.

32.    **Other Misrepresentations:** Be also concealed other material information from its customers. Be's contracts purported to provide "discounts" on Be's service providers' fees, but these purported "discounts" were illusory, because most or all of these service providers had no other customers: there was no regular rate from which the Be customers received a discount. For instance, Be's promotional pamphlet represented that the value of Dynamic Showcases' auditions/showcases was $6,500 but, on information and belief, Dynamic Showcases never received $6,500 for arranging any audition or showcase. (A true and correct copy of one of Be's promotional pamphlets is attached as Exhibit 8.) Moreover, these representations concealed that AFTSA prohibited Dynamic Showcases from charging an advance fee for arranging an audition. See Cal. Lab. Code § 1701.12(i) (2009). *See also* Cal. Lab. Code § 1701(b)(1) (2009) (charging advances fees for "[p]rocuring, offering, promising, or attempting to procure employment, engagements, or auditions for the artist" falls under definition of advance-fee talent service).

33.    Again, Be's statements about the value of its services had a natural tendency to influence, and was capable of influencing, consumers' decision about purchasing Be membership. If consumers had been aware that of the true nature of these purported "discounts," they would not have agreed to their contracts or paid Be's fees.

34.    DeSando is personally liable for Be's conduct alleged above.

---

DeSando identified himself as Be's CEO and was personally involved in the management of Be's business operations. As DeSando controlled Be and formulated the policies and procedures alleged herein, directly ordered, direct, authorized or participated in Be's acts alleged herein, he is personally liable for such acts.

### Tanner's Individual Claims

35.    On or about January 24, 2009, Tanner and his son encountered one of Be's salespeople in the Northridge Fashion Center Mall, in Northridge, California. The salesperson indicated that the Tanners' eight year-old son would be a good candidate for some acting work and invited the Tanners' son to participate in a Be screentest. On or about January 31, 2009, Tanner's wife and son attended the screentest at Be's offices in Tarzana. After the initial encounter and particularly after the screentest, Tanner's son frequently expressed an interest in becoming a professional actor, and expressed interest in earning money by acting in a TV show or a movie.

36.    On February 5, 2009, Tanner and his son had a third meeting with Be's salespeople in Be's Tarzana offices, including Liz Brainard (a Talent Coordinator), Ludwig Minassian (a Talent Director), and Rebecca Whitman (Be's VP of Talent Recruitment). During this meeting, Whitman and Be's other salespeople made the sales pitch alleged above and otherwise marketed Be's services. The main selling point in the sales pitch was that Be's services would provide access to auditions with talent agents, who could then secure professional employment as an actress or model for Tanner's son. Tanner and his wife signed a contract with Be ("Contract") at the third meeting. The Contract purports to provide "discounts" on the fees charged by Be's service providers, including a "discounted" $25 "Showcase Registration Fee."

37.    At the February 5 meeting, the Tanners received an instructions manual. At the February 5 meeting or immediately thereafter, Tanner made an

initial payment to Be of $325 and signed a contract and withdrawal authorization
form with Monterey. The contract with Monterey states in relevant part: "ANY
HOLDER OF THIS AGREEMENT IS SUBJECT TO ALL CLAIMS AND
DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE
SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR
WITH THE PROCEEDS HEREOF." Immediately after returning home from the
February 5 meeting, Tanner read the instruction manual. Tanner also immediately
skimmed through Be's website at http://www.Gonnabe.com ("Gonnabe.com").
The instruction manual and Gonnabe.com were consistent with the representations
made in the February 5, 2009 sales pitch.

38.    The purposes for which Tanner and his son retained Be's services
were (1) to have the son participate in a "showcase" or audition with a talent agent,
in order to obtain representation for Tanner's son that would provide him with
gainful employment as a professional actor and income from the same; and (2) to
receive any career advice or assistance necessary for Tanner's son to obtain such
representation. Tanner's son has never received any income as a professional actor,
or any other income from the entertainment industry. Indeed, no one from Be ever
contacted Tanner or his family about arranging a showcase for his son after the
February 5 meeting.

39.    Tanner would not have agreed to the Contract or paid Be for its
membership fee, and would have sought to rescind or cancel his Contract if Be had
disclosed that:

(a) Be paid the talent agents and talent managers would participated in the
showcase;

(b) Be's purported "discounted" price on acting lessons and the "Showcase
Registration Fee" were no lower than any other person who was charged for
those services;

(c) the "Showcase Registration Fee" violated California law in any event;

Complaint                                      15

and

(d) California law required Be to refund fees for services that it promised to perform and which were not performed.

40.     Be failed to disclose this information at any of its meetings with Tanner or in any of its marketing materials. In fact, Be never disclosed the foregoing information, and Tanner only learned of it through investigation by his counsel.

41.     Monterey withdrew four monthly payments of $208.38 from Tanner's bank account for March, April, May, and June via his debit card. In late June or early July 2009, Tanner canceled Monterey's authorization to debit fees from his bank account. Beginning on or about July 6, Monterey began to call Tanner and his family virtually daily to demand that he continue to pay under his contract with Be.

### Class Allegations

42.     **AFTSA Applies to Class Members:** AFTSA defined an artist to include any person who seeks to become an actor (on stage or in motion pictures), musical artists, models, and other artists or persons rendering professional services in motion picture, theatrical, radio, television, and other entertainment enterprises. Cal. Lab. Code § 1701(c) (2009). In light of Be's specific representations below, it is reasonable to infer that the children of Tanner and all of other members of Be were "artists" under AFTSA at the time they paid Be. There is no rational reason why a person would have paid Be's membership fee unless the person sought professional employment in the entertainment industry.

43.     **AFTSA Applied to the Fees Paid by Class Members to Be:** AFTSA defines an "advance fee" as any fee due from an artist prior to the artist obtaining actual employment as an artist or that exceeds the actual earnings received by the artist as an artist. Cal. Lab. Code § 1701(a) (2009). In light of Be's specific representations below, it is reasonable to infer that Tanner and the other members of Be paid "advance fees" as defined in AFTSA. There is no rational

---

Complaint                                    16

1 | reason why a person would have paid Be's membership fee if the person already
2 | had professional employment in the entertainment industry.

3 |     44.    **Relevant Facts Are Common to the Class:** The contract signed by
4 | Tanner is the same as the contracts signed by every of the other member of Be in
5 | all material respects. Be's sales pitch and marketing (in its website, its hardcopy
6 | promotional material, or its agent's scripted statements), and its policies and
7 | representations regarding auditions and discounted fees, remained materially
8 | consistent through the duration of its active operations.

9 |     45.    **Class Definition:** Tanner seeks to certify a class under Federal Rule
10 | 23. Tanner brings this Complaint against Debtor on behalf of himself and the class
11 | (the "Class") of

12 |
13 |       persons who entered into a contract with Be., LLC (or any its
14 | corporate successors or predecessors) which stated "We are an
entertainment company that offers a membership comprised of a
collection of resources, discounts and a support system designed to
help individuals get started on a pathway to success," and purported to
15 | provide discounted fees for e.g., Acting Workships and Showcase
Registration, in exchange for upfront payments prior to professional
16 | employment of the contract beneficiary;

17 | Members of the Class may be notified of the pendency of this action by email,
18 | mail, and/or supplemented (if deemed necessary or appropriate by the Court) by
19 | published notice. Members of the Class can be readily identified from Defendants'
20 | records and public records.

21 |     46.    **Class Numerosity:** The exact number of members of the Class is
22 | unknown and is not available to Tanner at this time, but such information should
23 | be readily ascertainable by DeSando. Be's website indicated that it had almost
24 | 7,000 registered users, DeSando stated publicly in 2008 that Be had over 5,000
25 | members. At some point, Be had to restructure its operations and create a shell
26 | company to process credit cards because so many of its members charged back
27 | Be's fees. On this basis, Tanner asserts that individual joinder of all members of
28 | the Class is likely to be impracticable.

Complaint               17

47.    **Class Commonality:** Common questions of fact and law exist as to all members of the Class and predominate over the questions affecting only individual members of the Class. Identification of the individuals who qualify as a member of the Class will be sufficient to establish liability to the Class member.

48.    **Typicality:** Tanner's claims are typical of the claims of the other members of the Class. Tanner is not different in any relevant way from any other member of the Class, and the relief she seeks is common to the Class.

49.    **Adequate Representation:** Tanner will fairly and adequately represent and protect the interests of the other Class members: their interests do not conflict with their respective interests. Tanner has retained counsel competent and experienced in complex class actions, and she intends to prosecute this action vigorously.

50.    **Predominance and Superiority:** The Class alleged in this Complaint is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual member of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Debtor's actions. It would be virtually impossible for Class members to obtain effective relief from Defendant's misconduct on an individual basis. Even if Class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

51.    **Generally Applicable Policies:** This class action is also appropriate

1  for certification because Debtor has acted or refused to act on grounds generally

2  applicable to the class, thereby making appropriate final injunctive relief or

3  corresponding declaratory relief with respect to the Class as a whole, and to the

4  Subclass as a whole. The policies of the Debtor challenged herein apply and affect

5  members of the Class uniformly, and Plaintiff's challenge of these policies hinges

6  on Debtor's conduct, not on facts or law applicable only to Plaintiff.

7
### FIRST CAUSE OF ACTION:
**Determination that Claims of Tanner and Class
Are Not Dischargeable under 11 U.S.C. § 523(a)(2)(A)**
8

9  52.    Tanner incorporates by reference and realleges all paragraphs

10  previously alleged herein.

11  53.    DeSando has personal liability for Be's conduct under a variety of

12  California law claims.

13  54.    California codified the common law tort of deceit at California Civil

14  Code § 1710. Deceit consists of "[t]he assertion, as a fact, of that which is not true,

15  by one who has no reasonable ground for believing it to be true" and "[t]he

16  suppression of a fact, by one who is bound to disclose it, or who gives information

17  of other facts which are likely to mislead for want of communication of that

18  fact[.]" Cal. Civ. Code § 1710(2), (3) (2010).

19  55.    As alleged in greater detail above, Be's statements regarding its

20  services were false statements or misleading omissions which Be knew to be false

21  or misleading and nonetheless made with the intent to induce reliance (or made

22  without a reasonable basis therefore), causing the Class members to justifiably rely

23  on the Misrepresentations, and sustain damage by paying Be's membership fees

24  when they would not have paid if they had known the truth.

25  56.    DeSando is personally liable for Be's deceit through his control of Be

26  and their direct involvement and personal participation in that deceit.

27  57.    AFTSA prohibits 1701.12 advance-fee talent service, *as well as their*

28  *agents and employees*, from (a) causing "any false, misleading, or deceptive . . .

---

Complaint                                    19

1  representation concerning the services the artist will receive or the costs the artist

2  will incur" and (b) causing the publication of "any false, fraudulent, or misleading

3  information, representation, notice, or advertisement." Cal. Lab. Code §

4  1701.12(a), (b) (2009).

5      58.   Be's statements regarding its services were false statements or

6  misleading omissions alleged above violated California Labor Code section

7  1701.12. DeSando is directly liable under AFTSA as an agent and employee who

8  caused the false statements or misleading omissions alleged above to be made.

9      59.   The conduct of Be alleged above violates California Labor Code

10  sections 1701.4 and 1701.12 and is unlawful and unfair. Be thereby violated Cal.

11  Bus. & Prof. Code § 17200.

12     60.   DeSando is personally liable for Be's UCL violations through his

13  control of Be and his direct involvement and personal participation in those

14  violations.

15     61.   The claims alleged in this Count are not dischargeable. DeSando

16  either directly caused Be to make the false statements or misleading omissions

17  alleged above, or he is responsible for such statements and omissions under

18  traditional agency principles because he controlled and dominated Be. DeSando

19  controlled Be and was Be's CEO. DeSando knew that the statements and

20  omissions alleged above were false and misleading, but he made them, caused

21  them to be made, or permitted them to be made with the intent that they would

22  deceive and induce reliance by Tanner and the other Class members. Tanner and

23  the other Class members reasonably relied on the false statements or misleading

24  omissions alleged above, and incurred substantial damages from such reliance in

25  the form of credit card payments made to Be that they are unable to chargeback.

26     62.   Tanner, on his own behalf, and behalf of the other Class members,

27  seeks an order holding that these claims are excepted and excluded from discharge

28  pursuant to 11 U.S.C. § 523(a)(2)(A), and judgment for damages (including actual

damages and exemplary and punitive damages for deceit, damages of "up to three times the damages actually incurred, but not less than the amount paid by the artist to the advance-fee talent service," as well as injunctive relief and attorneys' fees under Cal. Lab. Code § 1701.16 (2009) for AFTSA violation), as well as restitution, injunctive and equitable relief including a constructive trust under Cal. Bus. & Prof. Code § 17203, and the costs of the action (including attorneys' fees) under Cal. Code Civ. Proc. § 1021.5, against DeSando.

## SECOND CAUSE OF ACTION:
### Objections to Discharge Under 11 U.S.C. § 727(a)

63.    Tanner incorporates by reference and realleges all paragraphs previously alleged herein.

64.    DeSando's bankruptcy petition indicates that he stopped being a member, officer, and partner of Be in February 2009. However, Tanner's counsel has not been able to locate any evidence whatsoever supporting this assertion. The California Secretary of State's file for Be indicates that Be is still active and in good standing, but has no record of any change in the identity of Be's members or managers. (A true, correct, and complete copy of the file counsel obtained from the Secretary of State is attached as Exhibit 9.)

65.    In a telephone conversation at the end of August, Tanner's counsel indicated that DeSando did not have any documents related to Be in his possession, custody, or control. Be's other owners have asserted that all of its records have been destroyed or lost wholesale during the first part of 2009.

66.    California Corporations Code section 17058(a) required Be to "maintain in writing" at its primary office the following information: (1) a "current list of the full name and last known business or residence address of each member and of each holder of an economic interest in the [LLC,] together with the contribution and the share in profits and losses of each member and holder of an economic interest"; (2) "a current list of the full name and business or residence

Complaint                                    21

address of each manager" (if any); (3) copies of the articles of organization and all amendments; (4) copies of Be's income tax or information returns for the six most recent taxable years; (5) a copy of Be's operating agreement, "if in writing, and any amendments"; (6) copies of Be's "financial statements" for the six most recent fiscal years; and (7) Be's "books and records . . . as they relate to [Be's] internal affairs [for] the current and past four fiscal years."

67.    DeSando controlled Be. To the extent that any property containing evidence of Be's operations and finances (such as Be's books and records, or computers or servers containing records of Be) has been lost or transferred, DeSando was actively involved in or acquiesced to such loss or transfer. DeSando caused or permitted the loss or transfer of such property with the intent to hinder or delay Tanner and other consumers seeking to recover from Be. DeSando's discharge is precluded under 11 U.S.C. § 727(a)(2).

68.    DeSando had an obligation under the bankruptcy laws to keep and preserve records that would enable his creditors to accurately ascertain his financial condition and business transactions. Tanner does not have sufficient records from DeSando to determine (1) whether DeSando still possesses an interest in Be and (2) the value that interest and any other material transactions related to such interest, his discharge is precluded under 11 U.S.C. § 727(a)(3). When a debtor owns and controls a business entity and engages in substantial financial transactions (such as the sale of an interest in such business entity, the complete absence of recorded information related to those entities and transactions establishes a *prima facie* violation of 11 U.S.C. § 727(a)(3). There is no justification for the failure to maintain these records, nor has DeSando purported to advance any such justification.

69.    Tanner, on his own behalf, and behalf of the other Class members, seeks an order denying a discharge to DeSando under 11 U.S.C. § 727 pursuant to 11 U.S.C. § 727(a)(2) and 727(a)(3).

WHEREFORE, Plaintiff Kenneth Tanner prays that the Court enter judgment and orders in her favor and against Erik DeSando as follows:

a. An order certifying the Class, directing that this case proceed as a class action, and appointing Tanner and his counsel to represent the Class;

b. Judgment against DeSando, and in favor of Tanner and the other Class members for restitution, compensatory damages, punitive and exemplary damages, and statutory treble damages not less than the amount paid by the Class members to Be;

c. Equitable and injunctive relief, including a constructive trust and full restitution of any sums received from Tanner and other Class members and subsequently withheld from them, and an injunction prohibiting DeSando from violating AFTSA;

d. An order granting costs and attorneys' fees; and

e. Such other and further relief as this Court may deem appropriate.

Dated: November 8, 2010

By: _____
Ethan Preston (263295)
PRESTON LAW OFFICES
21001 N. Tatum Blvd., Ste 1630-430
Phoenix, Arizona 85050
(480) 269-9540 (telephone)
(866-509-1197 (facsimile)
ep@eplaw.us

David C. Parisi (162248)
Azita Moradmand (260271)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

*Attorneys for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit 1

Exhibits to Complaint

**7 ON YOUR SIDE** 🔊

**Talent agency's business practices questioned**

Friday, August 22, 2008

**EMERYVILLE, CA (KGO) -- You may have seen them in the shopping malls -- talent scouts asking if your child wants to be on TV. 7 On Your Side investigates an East Bay talent agency.**

7 On Your Side has received complaints from several people saying they thought their kids were auditioning for jobs, then were hit up for money. What we found is that there are more laws governing talent companies than you may think.

The pitch starts with a card handed out to consumers at shopping malls around the Bay Area. The card states that Be Productions of Emeryville is now casting for TV shows.

Story continues below

Advertisement

Hundreds of would-be stars responded, like these families.

"Your child's so cute and we're holding this audition and why don't you come bring her and we'll see what happens," says Pamela Roney, a Walnut Creek customer.

After the audition and a callback, families found out this all came at a price -- as much as $4,400 up front.

"I was ready to go... well both my daughters broke out in tears and wore me down and I finally agreed to do it," says Roney. "But in retrospect, I'm very happy I did."

For the fee, kids get discount prices on services like singing classes, photo shoots, auditions and a chance to appear in two shows produced by Be.

Some parents said they're happy. Others have regrets.

"But then I got slammed with the price," says Sandra Flores.

Sandra Flores signed a $4,000 contract for her daughter. Corina Flores, no relation to Sandra, signed a $3,000 contract for her son.

"After I came home, my reality kicked me in

1 of 4

the butt," says Corina Flores. "I can't do it. I can't afford it."

Both women called the company right away to cancel. Be said no because Sandra and Corina both failed to cancel in writing within three days as required by the contract.

So what are consumers' rights? If this is an ordinary contract, they are probably out of luck.

However, 50s' child star Zelda Gilroy says it is not ordinary. If you like TV reruns, you might recognize the feisty Gilroy from the old Dobie Gillis TV show. What does she have to do with this? Gilroy grew up to be powerful State Senator Sheila Kuehl and she wrote a powerful state law to regulate the type of talent companies that scout clients in public places.

"These people seem to be drawing you in. They'll go to the mall and they'll say you should be on television or your kid should be on television, just sign up with us and pay us a fee," says Kuehl. "We called them in the law, 'advance fee talent agencies' to separate them out because these people were charging a fee up front for services they hadn't provided yet."

The law is Section 1701 of the California Labor Code. It says talent companies that charge an advance fee must follow lots of rules, such as:

- Register with the state
- Post a $10,000 bond
- Give consumers 10 days to cancel in writing
- Refund all money if the artist does not get the expected services
- Cannot profit from referring clients to classes

"We are not governed by 1701," says Be Productions owner Erik Desando.

Desando says Be Productions, formerly known as My Artist's Place, does charge fees up front and does help kids get into show business, but it is not an advance fee talent service. He says Be doesn't actually provide the talent services like photo shoots, singing lessons and auditions. Rather, his company uses outside contractors. His company is more like a club.

"Those things you're talking about, they're

07/21/2009 03:11 PM

being done, but they're being done by outside companies, not ours. So, in other words, (if) you want to meet an agent through us, you can't meet an agent through us. You have to meet an agent through the showcase company we contract with," says Desando.

But 7 On Your Side investigated and found the showcase company that Be contracts with is Dynamic Showcases. State records show Desando is the chief executive officer of Dynamic Showcases and Be co-owner Barry Falck is a principal executive.

We reached Desando by phone. He told us he did own Dynamic Showcases, but in order to comply with Section 1701 he sold it to Barry Falck's son, Ryan Falck.

"When we discovered we couldn't own it, we sold it to Ryan, but he didn't follow through with the correct state documents. We never made any money on the company, but we made a deal," said Desando.

Desando said he did not recall when the sale was made.

We checked and found Ryan Falck's name was added to the corporate documents in June after 7 On Your Side began asking questions.

Be's other main contractor is Rising Stars, a school that provides acting, singing and dancing lessons. Be is linked to that company, too, providing videos for Rising Stars. Desando tells us he does not make any money from those videos so there is no conflict.

ABC7 legal analyst Dean Johnson says using outside vendors would not exempt Be from the law, anyway.

"They take an advance fee and for that fee you get access to essentially everything that an artist would want to develop his or her career," says Johnson. "That is the kind of service that is exactly what the authors of the talent service agencies statute intended to cover."

The author agrees.

"They do fall under the definition of advance fee talent agencies, so in and of itself, by

not posting a bond they are violating the law," says State Sen. Kuehl. "We made the law very broad in order to snare these kinds of folks."

We asked Desando if he could see why someone would think he would fall under 1701.

"Nope, not if they know our business," says Desando. "I've got our own high priced attorneys there telling us, you're not, we don't sell talent services."

Be started in Southern California. The Better Business Bureau of Los Angeles gives the company an "F" rating, mostly because it is operating without a license or registration.

"They're accepting fees in advance without the proper bonding or registration for what looks to us like jobs. If you look at their flyer, it says casting now for these television shows," say Gary Almond with Better Business Bureau.

"This really smacks right into the advance fee talent services because it is indirectly providing service to the talent," says Dean Fryer with the Labor Commission.

Still, Desando says, not me.

"Sheila's reason for the 1701 is to take unscrupulous operators that overcharge for services because they make promises they can't keep. Let's get rid of those companies. Let's get 7 On Your Side out there. Let's get rid of them. I'm completely for it and I'll go along with you arm in arm, you and I," says Desando.

The Better Business Bureau received 26 complaints about Be, many saying they thought their kids were auditioning for TV, others had a hard time canceling. An Antioch woman won a small claims judgment against Be after she tried to cancel by phone and could not. Finally, after we got involved, Be let both Sandra Flores and Corina Flores out of their contracts and refunded almost all their money.

**Related link:**

California Labor Code 1701

(Copyright ©2009 KGO-TV/DT. All Rights Reserved.)

07/21/2009 03:11 PM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit 2

Exhibits to Complaint



**Are all the children selected from the screentest?**

Unfortunately no. Only a small percentage of the children screened, meet the industry profile that top agents, talent managers and casting directors are looking for. The most important thing is to be yourself and don't be afraid of the camera. And have FUN!

CLICK HERE to get a Screen Test and get started today!

MORE FREQUENTLY ASKED QUESTIONS

< Prev          Next >

[ Back ]

   



©2008 www.gonnabe.com All Rights Reserved. This site requires Adobe Flash Player to run properly.

Privacy Policy



07/20/2009 12:38 PM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit 3

Exhibits to Complaint





---

## Updates & Rebuttals:

Correction
A [9/17/2008 1:44:59 PM]
THEY ARE A BIIIIIGGGGGG SCAM!
Jason Sullivan [1/5/2009 9:59:12 PM]
7 on your side did an expose on Be Productions in Fall 2008
Kay [5/24/2009 6:53:19 PM]
All past and present Be. Members
My Talent Service [6/19/2009 5:07:46 PM]

---

 A
Long Beach, California
U.S.A.

Submitted: 9/17/2008 1:44:59 PM
Modified: 9/18/2008 8:07:38 AM

**Update by Author**

### Correction

CW belongs to CBS network, not ABC, so I retract my statement about ABC being in on the scam. But somebody must have been sleeping with somebody, or someone paid someone a lot of money, because this company was made to look very credible despite what the Better Business Bureau has to say and other people who have dealt with them and wrote about them on this website.

---

Jason Sullivan
Burbank, California
U.S.A.

Submitted: 1/5/2009 9:59:12 PM
Modified: 1/5/2009 10:07:55 PM

**Employee Insider**

### THEY ARE A BIIIIIGGGGGG SCAM!

Be. Productions a.k.a. My Artist's Place a.k.a. Gonnabe.com is definitely a SCAM!

I WORKED FOR THEM AND THEY ARE A SCAM. I was a 'talent director' with Be. I have no experience in the entertainment industry what so ever, all of my experience is in sales, from furniture to gym memberships. They advised me to come up with a phoney background to pitch to parents and kids to make myself seem more 'hollywood'. All of the 'talent directors' are sales people. I was let go because I wasn't selling enough memberships a week. What could I do, I felt guilty pushing families into a dead end. They conduct at several 'callbacks' a day and break them down into small groups to make you feel like there was a cut and they conduct screen tests EVERY week! They call EVERYONE back as long as when you filled out the form at the screen test your income level fit the bill. Notice that letter they write at the top of your form then circle? That is a code letting the sales person a.k.a. 'talent director' know how much money you make and what tactic of sale to use on you and your family. This is 100% true and I wish I had never worked for a bunch of frauds like Be.

This company needs to be exposed for the scam they are. I remember seeing the scouts come in for interviews EVERY week with Danny and his girls, who are all also big frauds themselves. And the Buzz Band? The 'kids' in that band are actually a bunch of 20-somethings that are made up of the owner's daughter and her friends from school!!!! It is the only real interest the company has and the members' money all goes to funding their career and journey to discovery. The band sounds horrible too. It's all horrific. And they definitely DO NOT PAY THEIR EMPLOYEES!!! That is why they

---

07/20/2009 12:43 PM

Interview for scouts every week!



| | | |
|---|---|---|
| Kay<br>Antioch, California<br>U.S.A. | Submitted: 5/24/2009 6:53:19 PM<br>Modified: 5/24/2009 8:08:14 PM | **Consumer Comment** |

## 7 on your side did an expose on Be Productions in FAll 2008

Be aware that '7 on your side' in San Fran did an expose type piece on Be productions in FAll of 2008....so don't see how they would do that if they are connected with them in a SCAM....Just info for you. Piece can be seen on line.



| | | |
|---|---|---|
| My Talent Service<br>Los Angeles, California<br>U.S.A. | Submitted: 6/19/2009 5:07:46 PM<br>Modified: 6/19/2009 6:16:52 PM | **Ex-Employee** |

## All past and present Be. Members

Many Be. members have asked us, "What is My Talent Service?" and/or "What happen to Be.?"

My Talent Service is the preferred customer service provider for Be.

My Talent Service is here to help service all existing members. We will assist ALL past and present members with their questions pertaining to showcasing, scheduling, event participation, talent improvement, website instruction, and inside industry information. Our job at My Talent Service is to help make your memberships a worthwhile experience for you and your family.

If you have any questions, comments, or concerns, please contact us at any of the emails or numbers listed below.

My Talent Service Contact Information

Customer Service: (310) 282-2914
Office Fax: (310) 861-0638
Scheduling Email: talentservice@mytalentservice.com

Liz
Email: lizb@mytalentservice.com
Office: (310) 282-9968
Cell: (310) 488-5601

Cristina
Email: cristinal@mytalentservice.com
Office: (310) 282-9962
Cell: (310) 490-6653

Martin
Email: martinh@mytalentservice.com
Office: (310) 282-8836
Cell: (310) 488-6285

Debbie
Email: debram@mytalentservice.com
Office: (310) 282-9906
Cell: (310) 433-1396



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Exhibit 4

Exhibits to Complaint

 **AGREEMENT**

We are an entertainment company that offers a membership comprised of a collection of resources,
discounts and a support system designed to help individuals get started on a pathway to success

Corporate Headquarters
5900 Hollis Street, Suite R2, Emeryville, CA 94608  Tel. (510) 899-8785  www.goexpose.com    Contract date: 2/5/2008

**CHILD INFORMATION**  ████████████████████████████████

**PARENT/GUARDIAN**

First Name: Ken

Last Name: Tanner

████████████████      ████████████████

**MEMBERSHIP**

Membership Package: Guest Star

Form of Payment: 12 Month Financing    Check or CC #: . . . . / . . . . . . . . .

Price: $2,520.00  Down Payment: $325.00  Payment Plan: 12 Month Financing

Membership is valid for 2 years   Expiration Date: 2/5/2010

Ongoing Training: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    Amount Financed: $2,195.00

$25 fee on any NSF or Stop Pay' check or declined cancelled card payment. Maximum interest allowable by law will be charged on unpaid balance until collected.

By initialing below, I understand that the following discounted fees are required when attending workshops, photo shoots, and showcases from 'be' service
providers and are subject to change. These offers are per child.

Initial  X_____  $325.00 Instructor Fee per Acting Workshop
       X_____  $75.00 for 50 Duplicate Photos
       X_____  $25.00 Showcase Registration Fee
       X_____  $50.00 Word of Mouth Marketing
       X_____  $30.00 Ongoing Acting Workshop (per workshop)
       X_____  $25.00 Singing Program Workshop (per workshop)
       X_____  $25.00 Dance Program Workshop (per workshop)
       X_____  $25.00 Modeling Program Workshop

Purchaser acknowledges and agrees that none of the offerings of 'be' include any promise or guarantee of employment in the entertainment industry, whether
oral or written, expressed or implied.                                                        Parent/Guardian Initials X_____

Our cancellation policy complies with section 1689.22 of the California Seminar Sales Act. You, the buyer, may cancel this transaction in writing by fax, e-mail or
post without any penalty or obligation within three business days from the date of this transaction. See the Notice of Cancellation form on the reverse side for
complete instructions for canceling. We will respond within 10 days following the notice by the Buyer of Cancellation. For inquiries, disputes, complaints, or if you
have questions about returns, please call your local 'be' office.
Parent/Guardian/Buyer signature(s) acknowledges and accepts the cancellation policy as stated above and the backside of this document.

(Be Talent Director)_____  Print Name_____    . . . . . . . . . . Signature

(Parent/Guardian)_____  Print Name_____    . . . . . . . . . . Signature

(Buyer)_____  First Name_____    . . . . . . . . . . Signature

(Date)_____  'be' sends emails with newsletters, updates, and specials. Please check here if you would like not to receive these emails _____

# Notice of Cancellation

Transaction Date: _____

You may cancel this transaction, without any penalty or obligation, within three business days from the above date. Business days are Monday through Friday excluding holidays.

If you cancel, any property traded-in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within 10 business days following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be canceled.

If you cancel, you must make available to the seller, in substantially as good condition as when received, any goods delivered to you under the contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the sellers's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within 20 days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, a fee of $25.00 per information referral kit and $25.00 **Be.** Bag will be deducted from any potential refund.

_____
(Buyer's Name)

_____
(Child's Name)

## Cancellation Policy

Cancellation will be accepted upon your mailing, faxing, or hand-delivering, within three business days from the transaction date, a signed and dated copy of this cancellation notice to your local ˆbeˆ office.
Please see your Talent Director's card for local address and / or fax number.

## Refund Policy

You will be eligible to receive a refund upon you completing the above cancellation step and returning the information / referral kit via mail or hand delivery.

Reason of Cancellation:

_____
_____
_____
_____

I, _____
(Buyer's Signature)

hereby cancel this transaction on (Date)_____

For inquiries, disputes, complaints, or if you have questions about cancellations, please call you local ˆbeˆ office.

Note: When sending the information / referral kit by mail, it is recommended that buyer send it by Certified Mail, so that the buyer's name is included in or on the package to insure proper account is credited.

Please call your local **Be.** Office for their business hours. Cancellation requests, information/referral kit, and **Be.** Bag returns may be hand delivered **by appointment only with your Talent Director.**

*Cancellations after 3 days will be at the sole discretion of* ˆbeˆ

**FOR OFFICE USE ONLY**
_____ Information Referral Kits Received By_____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit 5

Exhibits to Complaint

About Be | Latest | News                    http://gonnabe.com/kids/News/Latest/About-Be.html



| Home | TV Shows | Music | Film | Studios | About Be. | Customer Service | Talent Agents |

Username _____  Password _____  ☑ Remember me
Register                          Lost Password?

Newest Members
Most Popular
Browse Members
Sitemap

**About Be**

Page 1 of 2

Be is a multifaceted organization designed to give young artists the resources, services, experience and exposure that they need in order to succeed in the entertainment industry. The company offers actors, musicians, dancers and models opportunities to expand their knowledge and talent while encouraging children to reach for the stars in every aspect of their lives: from schoolwork to social time, from academics to the arts.

Be's management team is headed by entertainment industry veterans with deep knowledge and expertise in casting, production and talent management, giving the company an insider's perspective on Hollywood. Be encompasses Be Productions, Be TV, and Be Music.

**Be. In The Press**

Article index
About Be
Page 2

Be's Kids Television Shows

The BUZZ

Are You an AGENT Looking for Talent?
Looking for talent for your next big production? CLICK HERE
Who's Online?
We have 5 guests and 4 members online
Members Online

■ Cynthia Paredes
■ Janae C
■ Shelley Thomas -Mosley
■ stephanie isidro

JMcMasters

Christiana Steenstra 5227
07-20-2009

Go to ABC7 News Website

Bay Area Kids Become National TV Stars! BE. Productions Airing *Say What* and *Kids Unlimited* On G4 Network

**San Francisco Chronicle**
GonnaBe.com in the San Francisco Chronicle - Be. Productions turns Bay Area actors into Bay Area TV Stars.

FASHION ON THE SQUARE
KIDS | ADULTS



The Hollywood Reporter - One Stop Shopping



GonnaBe.com in Reuters - Be. Opens San Diego Office - Launches New Search for Local
SD Talent



Broadcasting & Cable - Growing 'BE' Actors

BusinessWeek - Brands:Namestorming

**Be. on YouTube and MySpace**



YouTube.com



MySpace.com

Prev - Next >>

< Prev        Next >

[ Back ]














Christiana
Steenstra

Kristin
Masterson

Amy Oliverio

Mary
Oliverio

Jessica
Snow

ANDREW J.
MARTIN

Adrianna
Mair

   


©2008 www.gonnabe.com All Rights Reserved. This site requires Adobe Flash Player to run properly.

Privacy Policy



07/20/2009 12:36 PM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Exhibit 6

Exhibits to Complaint

What is Be.? | Frequently Asked Questions | FAQs                    http://gonzaba...m/kids/FAQs/Frequently-Asked-Qu...



| Home | TV Shows | Music | Film | Studios | About Be. | Customer Service | Talent Agents |

Username [        ]   Password [        ]   ☑ Remember me [        ]

Register                              Lost Password?

**Newest Members**

**Most Popular**

**Browse Members**

**Sitemap**

**Be's Kids Television Shows**

## What Is Be.?

Be. is a unique collection of resources for inspiring, developing, and enhancing the talent of young artists in the disciplines of acting, modeling, dance, singing, writing, beauty competitions and word of mouth marketing. Be. Provide's a proven game plan in which the artist gets to work with top entertainment pros that who will prepare them to be evaluated by top agents, managers and casting directors in San Francisco and Hollywood.

If you've been told your child has talent, and you want to get their career launched in the entertainment industry, you've come to THE right place. Remember there are a lot of things you will need to prepare before you can get started in TV, film and commercials!

Here at BE, we'll help you with the details of everything you'll need to know.

CLICK HERE to get a Screen Test and get started today!

MORE FREQUENTLY ASKED QUESTIONS

JMcMasters

[Back]                    Next >

FASHION ON THE SQUARE
KIDS | ADULTS

**The BUZZ**

Last Updated Profiles


**ANDREW J. MARTIN**


**Christiana Steenstra**


**Kristin Masterson**

**Amy Oliverio**


**Mary Oliverio**


**Jessica Snow**

**Adrianna Mair**



**Are You an AGENT Looking for Talent?**
Looking for talent for your next big production? CLICK HERE

What is Be.? | Frequently Asked Questions | FAQs                    http://gonnabe...m/kids/FAQs/Frequently-Asked-Qu...

   


©2008 www.gonnabe.com All Rights Reserved. This site requires Adobe Flash Player to run properly.

Privacy Policy



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Exhibit 7

Exhibits to Complaint



# Your Time to Shine

Agents, casting directors and managers are always looking for new talent. Talent showcases are your opportunity to interview with several of these professionals at once with the goal of gaining representation. Showcases give you a chance to experience a real audition. You will gain access to and benefit from the opinions of top industry professionals. Each showcase has a $25 registration fee.

## How to Prepare
## DIRECTIONS





## After the Showcase

- Agents and managers will offer helpful tips for improvement via mail.
- You can take this valuable feedback to your ongoing classes with Rising Stars.
- A customized class can be designed for you based on individual need.
- If you need clarification regarding the evaluation forms bring them to class with you, and your instructor will gladly explain them to you.
- If you do not receive an offer of representation, DON'T PANIC! Often times, it can take years of training, feedback, and showcasing - perseverance is the key to this business.
- DYNAMIC SHOWCASES wants every member to have a chance to acquire an agent!

DYNAMIC SHOWCASES works with top agents and managers, helping in the showcase process of thousands of kids in the industry.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit 8

Exhibits to Complaint





| MEMBERSHIP | | | SUPER STAR ONLY $4,995 | MOVIE STAR ONLY $3,495 | GUEST STAR ONLY $2,495 |
|---|---|---|---|---|---|
| TERM number of years | | | UNTIL 18 years old | 5 YEARS | 2 YEARS |
| REGISTRATION | Only $20 | Value $40 | ★ | ★ | ★ |
| PHOTOSHOOT | FREE | Value $300 | ★ 3 SESSIONS / YR | ★ 2 SESSIONS / YR | ★ 1 SESSION / YR |
| BIOSHOTS 50 prints | Only $75 | Value $150 | ★ | ★ | |
| STYLIST | FREE | Value $250 | ★ | ★ | ★ |
| MONEY CLASS 3 hours | Only $25 | Value $150 | ★ | ★ | |
| WORD OF MOUTH MARKETING 1 day | Only $50 | Value $575 | ★ | ★ | ★ |
| TALENT SHOWCASE | Only $25 per showcase | Value $650 | ★ UNLIMITED | ★ 5 SHOWCASES / YR | ★ |
| CELEBRITY EVENTS | Only $25 per event | Value $150 | ★ | ★ | ★ |
| INTENSIVE BOOT CAMP 12 workshops | Only $25 per workshop | Value $1500 | ★ | ★ | |
| RESUME SERVICE | FREE | Value $150 | ★ 2 YEARS | ★ 1 YEAR | ★ 1 YEAR |
| ONGOING TRAINING | Only $25 per workshop | Value $250 | ★ | ★ | |
| SINGING 8 workshops | Only $25 per workshop | Value $800 | ★ | ★ | |
| DANCE 8 workshops | Only $25 per workshop | Value $800 | ★ | ★ | CHOSE OF ONE |
| MODELING 4 workshops | Only $75 per workshop | Value $2000 | ★ | ★ | |
| (includes $25 photography fee per workshop) | | | | | |
| EVALUATION | Only $25 | PRICELESS | ★ | ★ | |
| COMPARE & SAVE | | | $54,418 VALUE | $37,292 VALUE | $26,292 VALUE |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit 9

Exhibits to Complaint

# State of California
## Secretary of State

### CERTIFICATE OF STATUS

**ENTITY NAME:**  BE., LLC

**FILE NUMBER:**       200603810081
**FORMATION DATE:**    02/06/2006
**TYPE:**              DOMESTIC LIMITED LIABILITY COMPANY
**JURISDICTION:**      CALIFORNIA
**STATUS:**            ACTIVE (GOOD STANDING)

I, DEBRA BOWEN, Secretary of State of the State of California, hereby certify:

The records of this office indicate the entity is authorized to exercise all of its powers, rights and privileges in the State of California.

No information is available from this office regarding the financial condition, business activities or practices of the entity.



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this day of September 23, 2010.

**DEBRA BOWEN**
**Secretary of State**

FEB-03-2006  01:18PM  FROM-

T-595   F.002/002   F-617



## State of California
## Secretary of State

File # 200603810081

**FILED**
In the office of the Secretary of State
of the State of California

**FEB 0 6 2006**

### LIMITED LIABILITY COMPANY
### ARTICLES OF ORGANIZATION

A $70.00 filing fee must accompany this form.

IMPORTANT -- Read instructions before completing this form.

This Space For Filing Use Only

ENTITY NAME (End the name with the words "Limited Liability Company," "Ltd. Liability Co.," or the abbreviations "LLC" or "L.L.C.")

1. NAME OF LIMITED LIABILITY COMPANY

My Artist's Place, LLC

PURPOSE (The following statement is required by statute and may not be altered.)

2. THE PURPOSE OF THE LIMITED LIABILITY COMPANY IS TO ENGAGE IN ANY LAWFUL ACT OR ACTIVITY FOR WHICH A LIMITED LIABILITY COMPANY MAY BE ORGANIZED UNDER THE BEVERLY-KILLEA LIMITED LIABILITY COMPANY ACT.

INITIAL AGENT FOR SERVICE OF PROCESS (If the agent is an individual, the agent must reside in California and both Items 3 and 4 must be completed. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 3 must be completed (leave Item 4 blank).

3. NAME OF INITIAL AGENT FOR SERVICE OF PROCESS

Jeffrey A. Tisdale, Esq.

4. IF AN INDIVIDUAL, ADDRESS OF INITIAL AGENT FOR SERVICE OF PROCESS IN CALIFORNIA | CITY | STATE | ZIP CODE

c/o Tisdale & Nicholson LLP, 2029 Century Park East #900 | Los Angeles | CA | 90067

MANAGEMENT (Check only one)

5. THE LIMITED LIABILITY COMPANY WILL BE MANAGED BY:

[ ] ONE MANAGER
[✓] MORE THAN ONE MANAGER
[ ] ALL LIMITED LIABILITY COMPANY MEMBER(S)

ADDITIONAL INFORMATION

6. ADDITIONAL INFORMATION SET FORTH ON THE ATTACHED PAGES, IF ANY, IS INCORPORATED HEREIN BY THIS REFERENCE AND MADE A PART OF THIS CERTIFICATE

EXECUTION

7. I DECLARE I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.

_A. Tisdale_

SIGNATURE OF ORGANIZER

2/3/06
DATE

Jeffrey A. Tisdale
TYPE OR PRINT NAME OF ORGANIZER

RETURN TO (Enter the name and the address of the person or firm to whom a copy of the filed document should be returned.)

8. NAME ⌐ Jeffrey A. Tisdale ⌐

FIRM     Tisdale & Nicholson LLP

ADDRESS     2029 Century Park East Suite 900

CITY/STATE/ZIP ⌊ Los Angeles, CA 90067 ⌋

LLC-1 (REV 03/2005)

APPROVED BY SECRETARY OF STATE



# State of California
## Secretary of State

### LIMITED LIABILITY COMPANY
### CERTIFICATE OF AMENDMENT

A $30.00 filing fee must accompany this form.

IMPORTANT – Read Instructions before completing this form.

**FILED**
In the office of the Secretary of State
of the State of California

MAY 1 2 2008

This Space For Filing Use Only

| 1. SECRETARY OF STATE FILE NUMBER | 2. NAME OF LIMITED LIABILITY COMPANY |
|---|---|
| 200603810081 | My Artists Place, LLC |

3. COMPLETE ONLY THE SECTIONS WHERE INFORMATION IS BEING CHANGED. ADDITIONAL PAGES MAY BE ATTACHED IF NECESSARY.

A. LIMITED LIABILITY COMPANY NAME (END THE NAME WITH THE WORDS "LIMITED LIABILITY COMPANY," "LTD. LIABILITY CO." OR THE ABBREVIATIONS "LLC" OR "L.L.C.")

Be., LLC

B. THE LIMITED LIABILITY COMPANY WILL BE MANAGED BY (CHECK ONE):

☐ ONE MANAGER
☐ MORE THAN ONE MANAGER
☐ ALL LIMITED LIABILITY COMPANY MEMBER(S)

C. AMENDMENT TO TEXT OF THE ARTICLES OF ORGANIZATION:

D. OTHER MATTERS TO BE INCLUDED IN THIS CERTIFICATE MAY BE SET FORTH ON SEPARATE ATTACHED PAGES AND ARE MADE A PART OF THIS CERTIFICATE. OTHER MATTERS MAY INCLUDE A CHANGE IN THE LATEST DATE ON WHICH THE LIMITED LIABILITY COMPANY IS TO DISSOLVE OR ANY CHANGE IN THE EVENTS THAT WILL CAUSE THE DISSOLUTION.

| 4. FUTURE EFFECTIVE DATE, IF ANY: | MONTH | DAY | YEAR |
|---|---|---|---|

5. NUMBER OF PAGES ATTACHED, IF ANY:

6. IT IS HEREBY DECLARED THAT I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.

SIGNATURE OF AUTHORIZED PERSON

DATE 5/8/08

Barry Fatck Manager
TYPE OR PRINT NAME AND TITLE OF AUTHORIZED PERSON

7. RETURN TO:

NAME Martha Brown
FIRM Be., LLC
ADDRESS 5900 Hollis St. R2
CITY/STATE Emeryville, CA
ZIP CODE 94608

SEC/STATE FORM LLC-2 (Rev. 03/2005) – FILING FEE $30.00

APPROVED BY SECRETARY OF STATE

RA-100



## State of California
### Secretary of State

### RESIGNATION OF AGENT
### UPON WHOM PROCESS MAY BE SERVED

There is no fee for filing this form.

IMPORTANT ~ Read Instructions before completing this form.

**FILED**
In the Office of the Secretary of State
of the State of California

DEC 3 0 2009

This Space For Filing Use Only

**ENTITY TYPE**  (Identify the type of business from which you are resigning as agent for service of process.  Check only one box.)

1. [ ] CORPORATION (domestic or qualified foreign)

[ ] REGISTERED GENERAL PARTNERSHIP

[✔] LIMITED LIABILITY COMPANY (domestic or registered foreign)

[ ] UNINCORPORATED ASSOCIATION

[ ] LIMITED PARTNERSHIP (domestic or registered foreign)

[ ] FOREIGN PARTNERSHIP
(other than a foreign limited partnership)

[ ] LIMITED LIABILITY PARTNERSHIP (domestic or registered foreign)

[ ] FOREIGN ASSOCIATION

**ENTITY NAME**  (Enter the name of the entity from whom you are resigning as agent for service of process.)

2.
BE., LLC

**ENTITY FILE NUMBER**  (Enter the file number issued to the above-named entity by the Secretary of State.)

3.
200603810081

**JURISDICTION**  (Enter the jurisdiction (state or country) under which the above-named entity was organized.)

4.
California

**STATEMENT OF RESIGNATION**  (The following statement declares intent to resign as agent for service of process and should not be altered.)

5. THE UNDERSIGNED HEREBY RESIGNS AS AGENT UPON WHOM PROCESS MAY BE SERVED IN CALIFORNIA FOR THE ABOVE-NAMED ENTITY.

**EXECUTION**

6. I DECLARE I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.

12/30/2009
DATE

Jeffrey A. Tisdale
TYPE OR PRINT NAME OF DECLARANT (i.e., the individual or corporation resigning as agent for service of process for the above-named entity)

SIGNATURE or SIGNATURE OF AUTHORIZED
REPRESENTATIVE OF DECLARANT (if declarant is a corporation)

TITLE OF OFFICE OF AUTHORIZED REPRESENTATIVE OF
DECLARANT (if declarant is a corporation)

RA-100 (REV 01/2008)

APPROVED BY SECRETARY OF STATE

| | | |
|---|---|---|
| **Secretary of State**<br>Business Programs Division | 1500 11th Street, 3rd Floor<br>P.O. Box 944260<br>Sacramento, CA 94244-2600 | Certification and Records<br>(916) 657-5448 |

## Limited Liability Company (LLC) or Limited Partnership (LP) Status Inquiry

In response to your recent request, enclosed is a screen print of the entity record. Please refer to the reverse side of this notice for an example of a screen print of an entity record and below for an explanation of the information contained in the screen print.

1. **VIEW** – The entity type on record, either LIMITED LIABILITY (for limited liability company) or LIMITED PARTNERSHIP.

2. **FILE NUMBER** – The entity number assigned by the Secretary of State (SOS) at the time of formation, registration or conversion.

3. **DATE** – The date of formation of a domestic (California) entity, the date of registration of a foreign (out-of-state or out-of-country) entity doing business in California or the date an entity converted to a California entity.

4. **STATUS** – The status code for an entity, described as follows:
   - **A** – Active. The *domestic entity* has filed its formation document in California and is authorized to carry out its business activities. The *foreign entity* has registered and is authorized to transact intrastate business in California.
   - **B** – Dishonored check. The entity's formation or registration filing was cancelled by SOS because the financial institution did not honor the remittance submitted as payment for the filing fee.
   - **C** – Cancelled. The entity filed termination documents terminating a *California* entity's powers, rights and privileges or terminating a *foreign* entity's authority to transact intrastate business in California.
   - **D** – Dissolved. The entity has voluntarily elected to wind up the business operations.
   - **F** – Franchise Tax Board (FTB) Suspended or FTB Forfeited. (LLC only) The entity's powers, rights and privileges were suspended or forfeited in California by FTB for failure to file a return and/or failure to pay taxes, penalties or interest.
   - **M** – Merged Out. The entity merged out of existence in California into another entity.
   - **O** – Converted Out. The entity converted to another type of entity or to the same type in a different jurisdiction as provided by statute.
   - **P** – Pending Cancellation. (LLC only) The entity filed a Certificate of Cancellation without a valid Tax Clearance Certificate prior to September 29, 2006, when the requirement for a Tax Clearance Certificate was eliminated from statute. To complete the cancellation process, the entity must file a final cancellation document pursuant to the revised statutes.
   - **S** – SOS Suspended or SOS Forfeited. (LLC only) The entity's powers, rights and privileges were suspended or forfeited in California by SOS for failure to file the required Statement of Information.
   - **2** – SOS/FTB Suspended or SOS/FTB Forfeited. (LLC only) The entity's powers, rights and privileges were suspended or forfeited in California 1) by SOS for failure to file the required Statement of Information; and 2) by FTB for failure to file a return and/or failure to pay taxes, penalties or interest.

5. **TYPE** – The type of entity, either DOMESTIC or FOREIGN.

6. **CALIF NAME** – The entity name as formed or registered in California.

7. **FOREIGN NAME** (not applicable to domestic entities) – The entity name as filed in the state or country of jurisdiction.

8. **LLC JURISDICTION** – (LLC only) The place of jurisdiction (state or country).

9. **EXEC OFFICE ADDRESS** – The address of the principal or designated office.

10. **CALIF OFFICE ADDRESS** – (LLC only) The address of the entity's office in California.

11. **ORIG COUNTY** – (LP only) For domestic LPs formed prior to July 1, 1984, and in existence at the time of registering with SOS, the code of the original county in which the LP was organized; and for foreign LPs, the home state or other jurisdiction in which the foreign LP was organized.

12. **AGENT NAME** – The name of the designated agent (individual or corporation) for service of process.

13. **AGENT ADDRESS** – The address of the designated agent for service of process.

14. **TERM/LP** – (LP only) The time or event in which the limited partnership has designated to dissolve as set forth in the Certificate of Limited Partnership.

15. **GPS/AMEND** – (LP only) The minimum number of general partner's signatures required for filing certain types of certificates.

16. **NO. OF AMENDS** – The number of history record amendments for the entity.

17. **TOTAL PAGES** – The total number of pages contained in all documents filed with SOS for the entity.

18. **LLC MGMT CODE** – (LLC only) The management structure (A=all members; S=single member; M=more than 1 manager; 1=1 manager).

19. **BUSINESS TYPE** – (LLC only) The type of business in which the entity is engaged.

20. **GP/MGR/MEMB** – The name(s) of up to three of the entity's general partners, managers or members.

21. **GP/MGR/MEMB ADDRESS** – The address(es) of up to three of the entity's general partners, managers or members.

22. **MORE GP/MGR/MEMBS** – The number of additional general partners, managers or members of record or there are "no" more general partners, managers or members of record.

### Example of Screen Print of an Entity Record

```
 SSIPHMO                  VIEW A        [ 1 ]     RECORD
 FILE NUMBER: [ 2 ]        DATE: [ 3 ]        STATUS: [ 4 ]          TYPE: [ 5 ]
 CALIF NAME: [ 6 ]

 FOREIGN NAME: [ 7 ]


 ELEC:                                 LLC JURISDICTION: [ 8 ]
 EXEC OFFICE ADDRESS: [ 9 ]
 EXEC OFFICE CITY:                     STATE/CNTRY:   ZIP CODE:

 CALIF OFFICE ADDRESS: [ 10 ]
 CALIF OFFICE CITY:                                   ZIP CODE:

 ORIG NUMBER:                ORIG DATE:            ORIG COUNTY: [ 11 ]

 AGENT NAME: [ 12 ]
 AGENT ADDRESS: [ 13 ]

 AGENT CITY:                       STATE:       ZIP CODE:

 TERM/LP: [ 14 ]       GPS/AMEND: [ 15 ] NO. OF AMENDS: [ 16 ] TOTAL PAGES [ 17 ]
 LLC MGMT CODE: [ 18 ] BUSINESS TYPE: [ 19 ]
 GP/MGR/MEMB: [ 20 ]

 GP/MGR/MEMB ADDRESS: [ 21 ]
 GP/MGR/MEMB CITY:                     STATE:    ZIP CODE:

 GP/MGR/MEMB:

 GP/MGR/MEMB ADDRESS:
 GP/MGR/MEMB CITY:                     STATE:    ZIP CODE:

 GP/MGR/MEMB:

 GP/MGR/MEMB ADDRESS:
 GP/MGR/MEMB CITY:                     STATE:    ZIP CODE:
 THERE ARE [ 22 ] MORE GP/MGR/MEMBS
    PF2=MODIFY REC    PF3=AMEND REC    PF9=AMENDMENT HISTORY    PF19=REDISPLAY LIST
                                                               CLEAR=MAIN MENU
```

Blank spaces indicate the information is not contained in the entity's file.

(LLC only) An additional screen print of the entity's amendment history will be included if the entity is both SOS and FTB suspended or forfeited.

The following codes may be included on an amendment history screen print:

1. LC – Domestic or Foreign Limited Liability Company
2. LP – Domestic or Foreign Limited Partnership
3. DC – Domestic Corporation
4. FC – Foreign Corporation

5. GP – General Partnership
6. BT – Business Trust
7. RE – Real Estate Investment Trust
8. UA – Unincorporated Association

Instructions and fees for ordering copies of filed documents and certificates of status for an entity are available on the Secretary of State's website at www.sos.ca.gov under Business Entities.

Questions regarding the requirements to obtain relief from (1) a Secretary of State suspension/forfeiture should be directed to the Secretary of State, Statement of Information Unit, P.O. Box 944230, Sacramento CA 94244-2300, (916) 657-5448; and (2) a Franchise Tax Board suspension/forfeiture should be directed to the Franchise Tax Board, Attention: Revivor Unit, P.O. Box 942857, Sacramento CA 94257-2021, (800) 852-5711.

```
.PHMO                   VIEW A LIMITED LIABILITY RECORD
 E NUMBER: 200603810081  DATE: 02/06/06  STATUS: A          TYPE: DOMESTIC
.LIF NAME:       BE., LLC


FOREIGN NAME:


ELEC:                              LLC JURISDICTION: CA
EXEC OFFICE ADDRESS: 2029 CENTURY PARK EAST #900
EXEC OFFICE CITY: LOS ANGELES              STATE/CNTRY: CA ZIP CODE: 90067

CALIF OFFICE ADDRESS:
CALIF OFFICE CITY:                                  ZIP CODE:

ORIG NUMBER:              ORIG DATE:             ORIG COUNTY:

AGENT NAME:  (AGENT RESIGNED 12/30/2009)
AGENT ADDRESS:

AGENT CITY:                         STATE: CA     ZIP CODE:

TERM/LP:                          NO. OF AMENDS: 2  TOTAL PAGES 3
LLC MGMT CODE: M     BUSINESS TYPE:

GP/MGR/MEMB:

GP/MGR/MEMB ADDRESS:
GP/MGR/MEMB CITY:                         STATE:     ZIP CODE:

GP/MGR/MEMB:

GP/MGR/MEMB ADDRESS:
GP/MGR/MEMB CITY:                         STATE:     ZIP CODE:

GP/MGR/MEMB:

GP/MGR/MEMB ADDRESS:
GP/MGR/MEMB CITY:                         STATE:     ZIP CODE:
THERE ARE NO MORE GP/MGR/MEMBS
    PF2=MODIFY REC    PF3=AMEND REC    PF9=AMENDMENT HISTORY
                                        CLEAR=MAIN MENU
```

1

## PROOF OF SERVICE

2

     I am employed in the County of Los Angeles, State of California.  I am over the age

3
of 18 and not a party to the within action; my business address is: 15233 Valleyheart Drive,
Sherman Oaks, California   91403.

4

5
     On November 8, 2010, I served copies of the foregoing documents filed by Plaintiff,
described as:

6

7
**COMPLAINT TO OBJECT TO DISCHARGE AND TO EXCLUDE PLAINTIFFS' CLAIMS
FROM DEBTOR'S DISCHARGE; and**

8

9
**ADVERSARY PROCEEDING COVER SHEET**

10
on interested parties in this action by placing ( ) the original  (x) a true copy thereof enclosed
in a sealed envelope (except for those emailed) addressed as follows:

11

12
**Gerald J. Koh
KM Law Group LLP
16000 Ventura Blvd., Suite 760
Encino, California   91436**

13

14

15
**[x]**    **(BY MAIL)**  I am "readily familiar" with the firm's practice of collection and
processing correspondences for mailing.  Under that practice it would be

16
deposited with the U.S. Postal Service on that same day with postage thereon
fully prepaid at Los Angeles, California in the ordinary course of business.  I

17
am aware that on motion of the party served, service is presumed invalid if
postal cancellation date or postage meter date is more than one day after date of

18
deposit for mailing in affidavit.

19

20
Executed on November 8, 2010, at Sherman Oaks, California.

21
     I declare under penalty of perjury under the laws of the State of California that the
above is true and correct.

22

23

24
_____
Paul D. Ostrosky

25

26

27

28